The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. We have a full courtroom. I understand we have some students with Professor Chizik from James Madison University, and we have some students with Professor Newman from Duke, and we have some students with Dr. Little from Winston-Salem State. I'm pleased to have you all and hope you learn something from this process. We're all very proud of it. We'll hear first from Mr. Morgan on the case of Gilliam v. Sealey. Thank you, Your Honor. May it please the Court, I'm Jim Morgan. I represent the defendants, Sealey and Locklear, but my argument is for all of the remaining defendants. The remaining defendants in this case are entitled to qualified immunity as to every claim brought by the plaintiffs for two general big reasons. First, because in the light most favorable to the plaintiffs, the officers did not violate the Constitution, and because looking at the specific actions of each specific officer, no bright lines were crossed, no existing precedent put it beyond debate. Your clients didn't violate the Constitution. Does that account for the plaintiff's position in this case? I mean, they have given a rendition of facts that would indicate a violation if those facts were true. Do you agree with that? No, Your Honor. With all due respect, I don't. The undisputed facts in the light most favorable to plaintiffs simply do not show a violation. If officers coerce a confession and then actually never get the confession, as I can determine from the plaintiff's point of view, they confessed to nothing. They signed two papers, neither one read it. The first one didn't read it, he just signed it, and the second one, it was read to him, and after it was read to him, he said that's not true. So according to the defendants, neither confessed. Now, I know that's their testimony and the officers testify to the opposite, so my question is if the proceedings proceeded on that basis and they were convicted on the basis of confessions, would that be a constitutional violation? I think in the abstract, Your Honor, in a different case in which... Those facts that I just laid out, would that be, if those were the facts, would that be a constitutional violation? If a plaintiff did not confess, well, first of all, I don't see how there could be a coerced confession, but in this case... We can get into those facts, that's a different issue whether they confessed at all, but if they did confess, they have also said one of them was 15 years old, the other one was 19, and they were threatened with ultimate sanctions, and the second one was, I think, a 15-year-old, his interrogation began at 2.40 a.m., didn't it? It began early in the morning, I don't remember the exact time. Yeah. Okay. Anyway, so your argument is that if those facts are positive, that's not a constitutional violation? Well, Your Honor, what I'm saying is that the facts in this case include something... Let's answer my question so we know the principles. The principle is that if a young person or anybody signed a piece of paper and didn't know what was on it, that could be considered a coerced confession, but in our case... That could or could not? Could. Under certain circumstances, it could. What we have in our... With all due respect, Judge Niemeyer, what you omitted from your recitation of facts in the lightness of the plaintiff is the fact that both plaintiffs filed motions for summary judgment in that statement of material facts for both plaintiffs, they both admitted that they verbally confessed to participating in the rape and murder. The verbal confession supplied the probable cause, regardless of what happened with regard to the written confession. And I think... To whom was the oral confession made? According to the statement of material facts to which there's no dispute, which was made by the plaintiffs, the verbal confessions were made to the officers in the room. Where? To the officers in the room who were in the room questioning them. Well, they denied that in their testimony. I don't recall that they denied making a verbal confession. They denied making any one of those statements. They denied making any confession. They said they were hammered on for hours. If they had made a confession and that was true, that would be one thing. But they categorically denied agreeing that they did any of that conduct in that room. Well... The officers said the opposite. But my only point on this is not that the plaintiffs are right. My point is that we need to understand whether there was a constitutional violation according to them, and then decide how do we handle it. I gather you agree that if it's a coarse confession, then we have a problem that we have to... The constitutional question is, was the confession involuntary or voluntary? If it was involuntary, then it violates the Constitution. So let me... Can I break that up into two different parts? As I understand the plaintiff's argument, just on this constitutional question that Judge Niemeyer's raised, they've really made two separate claims. And they conflate them sometimes, but they're two separate claims with respect to the confessions. I'll just use McCollum as the example. We can have the same conversation later. But one, they claim that there's a coercion. And that's sort of been the focus of Judge Niemeyer's questions. But second, and I think independent, they claim that parts of it at least were fabricated, right? And so that's the idea that the written portion was just fabricated. I understand your point, which is they made a verbal confession. Their argument with respect to the verbal confession is that that was coerced. It was involuntary. But separate and apart from that, as I understand it, they're also claiming there's a fabrication. You do agree that if there was a fabrication, that that would be a violation of the constitutional rights of these defendants? Your Honor, the cases I've read on confessions in the Fourth Circuit and the Supreme Court and the other circuits, the question is if somebody makes a verbal... Answer my question and then explain it. So yes or no, a fabricated confession, in your opinion, is not a violation of constitutional rights? The legal question is, was it voluntary? That's the legal question. Actually, that's not his question. I understand that. What I'm saying is... You're talking about coercion. My question is fabricated, just made up, right? This is the Wilmore or Whitmore, whatever that decision is. Like, they just made up a fact, right? Maybe he confessed, I did it. But then they go in and they add in a bunch of facts, right? It was Tuesday and the sun was out and they add facts to give credibility to the confession. That seems to me, that's fabricated evidence. And I hope you're not taking the position that that is a constitutional decision that can be made by officers in any circumstance. The Fourth Circuit case law states that fabricated evidence, if an officer fabricates evidence, if it directly leads to a conviction, then it's a violation of the due process clause. I agree with that. But my point is that in a situation where there's a verbal confession and then later there's a signed confession, Mr. McCollum, to use the example, signed on each page and initialed it. The question is, was that a voluntary confession, not was it fabricated? The legal question, I believe, should be, is it a voluntary confession? No, it's both, though. I think there's a third problem. There's the fabrication claim, there's the voluntariness aspect, and then there's the aspect which the parties didn't really address too much. And I read the testimony is that they never did confess orally during that period. As a matter of fact, that's why they were hammered so long. They were in there, how long was the, was it McCollum was the first one? Yes, McCollum was the first one. He was in there from, what, 8 until 2, something like that, 840 to 2 o'clock? According to the statement of material facts filed by the plaintiff in the district court, after an hour of questioning, McCollum confessed verbally. Okay, all right. And he was in there a few hours longer. He categorically denies that. He says, I never confessed to anything. So we have the plaintiff saying, I did not confess through misconduct. They claim there was fabricated evidence in the document and they claim that they were coerced, the whole thing was coercive. Those are the three things. And those are the alleged constitutional violations. As to the confession. And there's obviously a big disagreement about that because we have multiple officers testifying to the opposite. Well, Your Honor, when the plaintiffs file something in district court admitting that they verbally confessed, that's a judicial admission. They're bound by that in district court and at the Fourth Circuit Court of Appeals. So they should not be allowed to come in here and say they did not verbally confess. Were you saying this or pointed out to me? I thought I looked that up. Well, in the brief, I think it's page 6, footnote 2. I'm not 100% sure of that. Yeah, page 6, footnote 2 is right. What are you citing to, though, I think is the? Page 6 of whose brief? Page 6, yeah, the blue brief, my brief. I'm asking where is the joint appendix 344 at page 6. What I say in the brief is this plaintiff specifically admitted in their statement of material facts pursuant to Local Rule 56 after more than an hour of questioning by the officers, McCollum verbally confessed to the rape and murder of Sabrina Bowie. Yeah, but I think I looked at that, and they signed the document. But if you look at the testimony about the document, it was said, if I sign the document, you can go home.  Your Honor, with all due respect, I think if you go back and read the statement of material facts, it lays out that after an hour of questioning, he verbally confessed. And then after that, the statement was written out. Verbally, where is this? So you're reading paragraph 32. I do think this is an important point. So paragraph 32 on 344. JA344? JA344. It says, after an hour, induced him to falsely confess. It doesn't say anything about whether it's verbal or otherwise. I take it what you're drawing is the implication that they subsequently talk about a written confession, and so the implication of their statement in paragraph 32 is that that was a verbal confession. Yes, because if you look at the timeline, he didn't sign the written confession until much later. So if after an hour of questioning, he was induced to confess, which means he confessed, then he verbally confessed, that provided probable cause. I will also say no one's mentioned collateral estoppel, but, Your Honor, all of the points that you're talking about, whether or not there was a fabrication, whether or not the confession was voluntary, all of this was litigated in state court. And every state judge, after full and fair opportunity for the plaintiffs to litigate this in state court, every judge found that both brothers voluntarily came to the station, voluntarily signed Miranda waivers, and voluntarily confessed. I want to be sure I understand your argument. And there sort of seems two different lines of what you call collateral estoppel. I'm not sure technically they are, but we'll call them that for this purpose. Your position is that even though those convictions are vacated, do not exist anymore, and at least except from a hypothetical that they were procured by fraud, that is, fabricated evidence of what happened, in your opinion, collateral estoppel still applies, and they lose even if those facts were true. That is, the judgment has been vacated completely, and the conviction was procured by fraud, that is, false testimony. I'm not saying that that's actually what happened. I'm saying that's what the allegations are at this point. Your position is it doesn't matter, still collateral estoppel. Yes, Your Honor, and that's, I believe, fully explained in the briefs, much better than I could explain it standing here. You can't challenge any conviction that's obtained by fraud then. In other words, if they testify falsely about what occurred in that room, and the jury hears that testimony and says, oh, that testimony, they were voluntary, they confessed, and that's the only testimony they hear, and later it's determined that was fraudulent, you can never challenge that because under your position, collateral estoppel will always bind based on a conviction. Well, in this case, in the first trial, the plaintiffs actually testified. They actually gave their story in the first trial, and the judge found that they voluntarily confessed. I'm saying under the facts of this case, where we're at. That's a question of issue preclusion. Issue preclusion very clearly requires that it be necessary to a final judgment. We have no final judgment. We do have a final judgment. Both of these, there were two convictions that were affirmed by the court of appeals, and then later the superior court judge vacated the judgment. Which means there's no final judgment. On other grounds. Well, that goes to the whole. Other grounds, I get that, but then now you're saying issue preclusion, but issue preclusion requires it to be necessary to a final judgment. Well, there was a final judgment, Your Honor. You're right, it was vacated. It was vacated. Which means it's no longer a final judgment. When we're looking at it today, it's not a final judgment. It's been vacated. But if you look at the cases I cite in the brief, the line of cases I cite that say a conviction in a lower court is conclusive as to probable cause, even if that conviction is later overturned. Unless? Unless the probable cause was fraudulent. I mean, they can totally fabricate and make it up and have a probable cause determination there. But if it's later determined that that was fraudulent, how can that be binding? We could never challenge a conviction then. The plaintiffs had a full and fair opportunity to litigate that. They brought up all of these points at the time, or if not the exact points, similar points at the time that they were coerced. One of the purposes of collateral estoppel is to stop endless litigation over the same thing. The vacation of the judgment was done based on DNA evidence. The cases we cite in the brief stand for the proposition that under North Carolina law, which this court is obligated to apply, collateral estoppel will apply even if a judgment is vacated. Your Honor, I'm over my time. I'll reserve whatever I have left for rebuttal. Just briefly, what other main point? I guess the underlying question here in the district court basically said there are disputed facts that have to be resolved to determine whether there's immunity. And I guess my question was going to get to that issue, and I never gave you a chance. But it seems to me if they testify today about, number one, they were coerced. Number two, they never confessed. Number three, that it was fabricated. Unless we make a credibility finding at this point, shouldn't we leave that to the finder of fact? And that was where I was leading to. No, Your Honor. You look at the facts and the language of the plaintiff, and what you do is given that both of these men confessed verbally as they admitted in their statement of material facts, then what you do is you look at what do they say happened, and was that the sort of coercion that rises to the level to make the confession involuntary. And if you look at U.S. v. Wirtz, for example, where a gun was pulled on a guy and said right after the gun was pulled he confessed, that was much worse than anything they say happened in the confessions. I also will say, and I guess I'll say this rebuttal, but with regard to the due process claims, they simply have not shown that any remaining defendant did anything that would have violated any due process precedent today, much less there was an existence at the time back in 1983. So with that, I'll reserve whatever I have left. Okay. Thank you, Judge. Thank you. We'll receive you again. All right. Mr. DeFord. No, excuse me, Ms. Stetson. Thank you, Your Honors. Sorry, I read from the wrong list. My name is Kate Stetson. I represent Dwayne Gilliam and Raymond Tarleton, who of course are the guardians for Leon Brown and Henry McCollum. I want to start just by a correction to the record to make it fully and to sharpen the point, Judge Richardson, that you made. Mr. Morgan, several times today in his brief, talked about these two brothers as having verbally confessed. Judge Richardson, you're exactly right, that when you read paragraph 32 of Joint Appendix 344, what it says is, after more than an hour of accusing McCollum and receiving protestations of innocence, Seeley, Smead, and Allen broke down Henry Lee McCollum and induced him to falsely confess to the crime. Same paragraph 42, Joint Appendix 34. But help me understand this, because I'm maybe not sure I fully get it. Because when I read 32 and 33 as fairly as I can, after an hour they induced him to confess. The next paragraph says, then over the course of the next four hours, plainly reading 32 and 33 together on page 344, I don't see how those two paragraphs is suggesting anything other than what he is claiming, which is, they confessed after an hour, falsely is the accusation, but that they said something, confessed after an hour, they interrogated without making a value judgment about that for the next four hours, and then he signed a written document. I don't see how we read 32 as saying anything other than that. I think Judge Richardson, you're 32 as saying that he was coerced into falsely confessing. No, no, I get that. But my point is, you agree that the records, yes, reading paragraph 32, that it was coerced and that it was false, but after an hour Mr. McCollum did in fact confess. What the allegation is in the statement of material facts is that he was induced or coerced into falsely confessing. But here's a more important point. But answer my question first, I'm sorry, before you move on to it. But you answered the first two points, right? So it was induced, it was coerced, it was false, but also after an hour he verbally confessed to the crime. You agree that that's what the record reflects? No, I don't think that's what the record reflects. How do I read 32 otherwise? I mean, I don't, I'm with you. I'm a little surprised at the concession below, but I don't see how you read 32 and 33 as anything other than a concession that he verbally confessed after an hour. I think you read 32 and you read 42 as a concession that they falsely confessed after being coerced. No, no, no, but it is very specific. 32 is not vague about this, right? It is very specific with respect to timing, particularly read in light of paragraph 33. After an hour, confessed, falsely, under coercion. I get those two, but I'm talking about did he verbally confess. Paragraph 33, over the course of the next four hours. I mean, this is a timeline confession. This isn't a generic, oh, he did falsely confess. I think, Judge Richardson, you and Mr. Morgan are reading a little bit too much into the timeline, particularly when you take into account the point that Judge Niemeyer raised earlier, which is with respect to both Henry and Leon, they were told that if they signed a piece of paper, they could go home. If you look at the district court's opinion. That's all coercion, and I get all that. Maybe the answer is you just think I should ignore paragraph 32, which is fine, but I wonder a little bit about that. No, I don't think you should ignore it. You certainly should take note of the fact that it says coerced and falsely, which keeps getting left out. But ignore the timeline. But ignore the timeline to the extent that you have other evidence taken from the that talk about how, for example, Leon was told just to circle yes or no on a piece of paper when he first walks in the door, if he could help them. He circles no, and yet the interrogation continues. He's told, and this is Joint Appendix 1094, 1-0-9-4, he is told you just need to sign this piece of paper in case we need to get back in touch with you, and then you can go home. Joint Appendix 597. Did he ever testify that he confessed falsely? He has maintained his innocence throughout this, including at the first trial. I know, but during his deposition, in other words, I'm exploring a little further what Judge Richardson is exploring. There it seems to suggest he said the words confession, even though they're false and induced. And I thought his testimony was he didn't even confess at all. That is certainly his testimony. His testimony with respect to Mr. McCollum, his testimony is that he did not read and was not read to the confession that he ostensibly signed. He was told, wait, you've got to sign your papers, and then you can go home. And what is his IQ? His IQ is classified as intellectually disabled. And as Judge Niemeyer reminded Mr. Morgan, we're talking about a 19-year-old who says at one point in his deposition, I've never even been in a police station before. A 15-year-old with a similar intellectual disability. Can you help me? And I'll leave this point alone because I want you to get the rest of the argument. Can you help me with what is the place in the record, to the extent I'm to ignore the timeline in paragraph 32 and 33, where is the point in the record that I can look where Mr. McCollum denies having made a verbal confession? Admittedly, coerced and false. I don't want to dispute those points. But he denied making a false statement, a false confession, verbally before they get to the written portion. If you look at his cross-examination in the first trial, for example, which starts at Joint Appendix maybe the 580s or 590s, you will find him maintaining his innocence throughout. That's a different question, right? I'm not saying maintaining his innocence. I want to know where in the record he denies having made what you claim to be a coerced false confession, verbal. Do you understand the dink? I understand he maintains his innocence, right? But he can be innocent and still have said, coerced and falsely, that he did it. In fact, he says it on video later, right? So there's no doubt he says it at some point. The question I've got is where in the record can I look to see that Mr. McCollum said, I never verbally confessed. I understand the written portion. That's what I'm having trouble with because I actually think 32 and 33 are correct. I don't think the record reflects that Mr. McCollum never said it. I don't think that dooms your case by any stretch of the imagination. But I do think it's an important point for us to understand whether he falsely said something after an hour or whether the only falsity was the signature. Judge Richardson, there are a couple answers. The first is I'll get you the exact site that says I never confessed. I'm happy to do that. But more importantly, this case isn't about the coercion necessarily. This case is about, as Judge Niemeyer started with, the bright line between tricking someone into waiving their rights and not. So if you look at the way the district court approached this case. Well, I don't know if that's what I understood the case to be. My whole inquiry was whether the conduct alleged violated the Constitution. And I think we seem to agree that if some of these allegations took place, it was fabricated or it was coerced, or if you didn't even make a confession, all of these things would be violations of the Constitution. And I think the defendants agree with that. The next question that follows, and I really raised this a little earlier, is if that's so, are these questions a fact that a fact finder has to find before we can determine whether there's qualified immunity? Because if there are factual questions that are necessary for resolution to determine immunity, then we don't determine that at this level. That's right. So at this level on interlocutory appeal, I think the things available to you are whether the right was clearly established. And with respect, for example, to tricking someone into waiving their rights, I'm reading from Miranda, any evidence that the accused was tricked into a waiver will, of course, show that the defendant did not voluntarily waive. So there's not really a clearly established question here at all. With respect to the question whether the rights were violated, what you've heard this morning is that these defendants, the appellants are maintaining that these rights were not violated as a matter of law. Can you go back to what you just said? I get the idea. You say trick. I want to focus on Mr. McCollum. We can do the same thing with Mr. Brown, but I want to try to keep them a little bit separate. But with respect to Mr. McCollum, walk me through the five best facts that you have that show coercion, and separating that from falsification of evidence. So I get that point. The signed document, the falsification, I understand that. One might imagine that that's going to go to trial somewhere. But what I'm having trouble understanding, particularly with Mr. McCollum, is what is the evidence that you've put forward, taking it in the light most favorable to you, that he was coerced in giving the confession? The evidence taken in the light most favorable to us, you can find this at Joint Appendix 319 to 320, is that Mr. McCollum was told, if you sign this piece of paper, you can go home. He says that both with respect to the Miranda waiver, which occurred at the beginning of this interrogation, and he says that with respect to the confession. So to the extent that something occurred in between there, he had already been duped into waiving his Miranda rights. So one is tricky. So I got that. We can talk about that. Is there anything else that I should be looking at to evaluate whether you've put up enough to survive beyond this point? Sure. So I think going back to something that Judge Niemeyer raised, there are a few different strands here. What I've been focusing on is essentially the total lack of knowledge, the lack of knowledge that Mr. McCollum aversed, both in signing the waiver form and signing the confession. The lack of knowledge that Mr. I'm focusing on, I mean, coercion. He testified they were hollering at me. They were in my face. They threatened me with the, I mean, these are the facts that create coercion, not this. That's where I thought you were going. And that's the second strand. When we talk about coercion, we talk about voluntariness and knowledge as well. So I'm starting with the trickery. Forget the knowledge. What actually happened in that room that was coercion? In that room in the middle of the night, an intellectually disabled 19-year-old man was hollered at, was told that he would be sent to the gas chamber, which having never been in a police station before, he says at his deposition, I thought these officers could do that. He was told that if he signed something, he could go home. He was told he could see his mother if he did what they told him to. Those are the aspects that constitute. Did he ever ask, and with respect to Mr. McCollum, did he ever ask to see his mother? I know Mr. Brown did. I have not been able to find anywhere in the record, again, I'm trying to be as specific as I can, where Mr. McCollum asked to see his mother. I believe he did, but just as important, I think, his mother asked to see him and was told that she would be put in jail if she continued to protest. That's not in the room. In the context that I've asked for the record site, with respect to Mr. McCollum denying, if you also could provide a record site for the specific point, very precisely, that he asked for, not that you say it in sort of the passive voice, he was denied the right to see his mother. When I read it, when you say it, with respect to Mr. Brown, you say they told him that he could not. The passive voice is a little bit different. It suggests to me that the record doesn't reflect that Mr. McCollum actually asked, but if you have that information, I'd appreciate that as well. Certainly, with respect to Mr. Brown, of course, who was the 15-year-old, he repeatedly asked for his mother and was told, in fact, that he couldn't see his mother until he did what they told him to do. But you agree that coercion analysis is independent, right? I mean, the fact that they said that to Mr. Brown doesn't render, if that was the only thing, that would not render Mr. McCollum. And we have to look at their factual circumstances differently. I mean, 15, 19, the specific circumstances matter. It's not a joint project, right? This isn't a group project. No, no. They interviewed them separately, took in Leon, of course, by himself. His mother was pounding on the door when she let him in, and he heard her, and they were both crying. That's Mr. Brown. Brown, right. Yes, absolutely. That's Brown, yes. But with respect to McCollum, that constellation of facts that I just told you, which is intellectually disabled, never been in trouble with police before, never been in a police station before. But see, all of those aren't coercion. I mean, it seems to me that coercion comes about the way they treated him, what they said to him, how they handled him, and some of these things we're talking about. They were standing, they were hollering in his face, they were telling him he was guilty, they threatened him, they said he was going to go to the gas chamber. They tricked him. He said, they tricked me. Yes. But those are the coercion things. The fact that he doesn't have knowledge just shows. It shows him to be an especially vulnerable person, and that is important to the coercion. It is, but you still have to have the conduct that's coercive. And there is that. You haven't mustered that evidence. I keep pulling it out of you. The evidence is everything that we have listed and the district court listed in its decision. I can go back over it. The evidence is just what you have said. The evidence is that he was screamed at, that he was called racial epithets, that he was told, as I said earlier, that he would be sent to the gas chamber if he didn't talk. All of those are coercive. Can I ask a legal hypothetical that may not apply here but that I've just struggled with and maybe you can give me some insight? I really want to focus on the false arrest claim. I'll do it just with respect to Mr. McCollum, not for any reason other than he's the person. But if you have an individual and imagine the scenario where this individual was caught on camera robbing a bank, there's DNA evidence that he was robbing the bank, and when he robbed the bank there were 37 nuns in there that positively identified him. So you have very strong evidence that he robbed the bank. The police officers bring that defendant in and they coerce a confession out of him. And let's accept that it's coercive, involuntary, whatever words you want to use that apply there. Is there a false arrest claim in that scenario? Because we know before the coercion there was overwhelming probable cause. You might even say proof beyond a reasonable doubt. But there was at least probable cause. What I'm trying to tease out, if I'm making myself clear, is in that scenario where the 37 nuns have identified the guy on video with DNA, can a coerced confession constitute a false arrest claim? I think where there is independent probable cause that wasn't essentially extracted by virtue of or after the coerced confession, that's not a false arrest claim. The confession certainly would be suppressed. And tell me why is that not? I get that, right. But tell me why, in your understanding, my hypothetical is not a false arrest case. I think for the reason that you identified, that there you have a separate set of evidence giving rise to probable cause that isn't tied to the false confession. But here, just to contrast your hypothetical. I get that, but I've got one more follow-up. I understand why this case is totally different. But the follow-up to that is, is there a malicious prosecution case in that same hypothetical if the officers don't disclose the coercion and the confession is used at trial? So in the same scenario we've got, the nuns, the DNA, all that stuff. But then the confession gets used at trial because the officers lie about what they did, and it's then used at trial. Is there a separate malicious prosecution, just a strictly legal question that I've struggled a bit with, and I'm just hoping you can provide some thought. I think at that juncture it would be a separate due process claim, and it would sound in the Brady-Barbee line, essentially. Not in a malicious prosecution. Not in a malicious prosecution, because it would have to do with the fact that the police officers, in your hypothetical, in bad faith, withheld that evidence that arguably may have been material, because a confession, of course, is quite material to any case. That's what I thought. I just wanted to make sure that you were in agreement with that. I'm sorry that was a longer story than I wanted. I am, and I'm happy to speak to the Brady-Barbee issues, which are separate in this case anyway. Just for 30 seconds, it's clearly established under Brady and Barbee that when police officers, in bad faith, withhold potentially exculpatory evidence from the prosecutor and the defense, that there is a due process claim arising from that. We have put on evidence here that a witness told two of these defendants that she saw another suspect, Roscoe Artis, attacking Sabrina Bowie. We have evidence that Roscoe Artis's fingerprints were sent to the SBI for analysis days before the brothers' first trial, and no one was ever told about that. So we think that's quite a clean case of a due process violation. I want to put aside the witness statement question and whether that was suppressed or not. That's a separate issue. But with respect to the other issues, it seems like to me you're making a failure-to-investigate argument that I don't find anywhere as being clearly established. They had these fingerprints, and they failed to actually get them tested. They submitted them, but they didn't get tested, and then they canceled them a year later. And similarly, they had these leads on Roscoe Artis, and they didn't follow up on them. But throughout our case law broadly, we have been very hesitant to impose upon law enforcement a duty to take action. If they take that action, they can do it improperly. But a failure to take action is one that almost never— created the danger, this is the sort of doctrine that's come to develop, that that is an independent due process violation. So tell me why that line of cases doesn't doom the two parts of this, the fingerprint piece and the Roscoe Artis, they didn't investigate the lead piece. Two responses. The first is I do want to resist where you started, which is setting aside the Mary Richards statement. Because we know under Casella v. Hughes that you look at this obligation in the round to see what the cumulative effect of that evidence may have been. So setting that aside— You look at the cumulative effect, but you don't look at it cumulatively to determine whether it's a constitutional violation. You look at a cumulative violation of constitutional issues, but you've got to evaluate each piece to determine whether it's a constitutional violation. That's right. The answer to your question is that this isn't a failure to investigate case. This is a case where there was another suspect whose fingerprints were on something that was collected at the crime scene who was sent to the SBI for analysis. This is not that they failed to pursue Roscoe Artis. This is that they had identified Roscoe Artis as a suspect in this case. Everything you say is a failure. They failed to do this. They failed to test the fingerprints. They failed to run down the lead. All of those things are failures. They're inaction, not action. Judge Richardson, what we say they failed to do is to fail to turn over the fingerprints request to the prosecutor and the defense counsel. Defense counsel went into that first trial thinking that these two were the only two that the police officers ever had their eye on as suspects. What he did not know, what the prosecutor apparently did not know, is that a few days before, Roscoe Artis had been identified as a suspect in this case. That is not a failure to investigate. That is a failure to turn over potentially material evidence to the prosecutor. If there are no further questions. All right. Mr. Horton. There are a lot of issues in this case, and I would say that I couldn't explain them all in the short time I have, but I would urge the court, and I know you already have, read the brief carefully, because the plaintiff's biggest problem, I think, with regard to the due process claims in particular, is that they don't identify any particular defendant doing any particular thing wrong, and that must be done. The district court didn't do it either, which was a failure of the district court to properly apply the qualified immunity test because you have to focus on specifically what the officer did. Just as an example, Roscoe Artis, somebody in the SBI checked the suspect box for Roscoe Artis. All of the officers testified we never considered him a suspect. The district attorney and the criminal defense team knew everything the officers knew about Roscoe Artis' criminal history. Apparently nobody considered him a suspect until decades later. What about Richard's testimony that she saw Artis there? Richard's testimony is that she told officers that she saw Roscoe Artis attacking Mary Richards. Mr. Sneed, I believe, wrote up a summary. Mr. Sneed, one of the defendants in the case, wrote up a summary and put it in the SBI file. His summary said that what Mary Richards told him was that three youths were seen with Mary Richards the day she disappeared and that one of the youths was talking rough to her. Now, as Your Honor knows, undisclosed evidence is not suppressed under Brady when a criminal defendant or his attorney could have obtained the evidence with any reasonable diligence. Mary Richards was identified as a witness. She was identified as someone who saw the decedent, Ms. Bowie, the day she disappeared with some rough-looking guys. Any reasonably diligent attorney would have talked to her and probably did. That's not on the record whether they talked to her or not, but they probably did, and she probably didn't tell them this story, which came out later. But anyway, I know in the light most favorable to the plaintiff we have to say that she told the police officers that. What I'm saying is the case law makes it clear that Brady does not require you to disclose evidence that a reasonably diligent attorney would uncover with his own investigation. And I've cited the cases in the brief. Focusing on McCollum's questioning, I've read 300 or 400 cases involving coerced confessions and voluntary confessions. There's no bright line. There's no bright line about what constitutes coercion. In this case, if the plaintiff's testimony- Are you saying it could never be clearly established then because there's no bright line? I'm not saying it can never be clearly established, Your Honor, but what I am saying is in this case the evidence is the officers raised their voices. They yelled. They accused. They used racial epithet or epithets. They threatened him with the gas chamber. That does not even come close to the type of coercive behavior that would be considered an involuntary confession. Look at the case law, Your Honor. I'm not making this up. Threatened him with the gas chamber? I'm not making this up. If you'll read the cases, what you'll find is that there are cases much worse than this, especially in 1983 when this happened. So it's just going to be worse than this? Yeah. Well, Your Honor, what you do when you look at qualified immunity, you look and see, was there a bright line, and did they step over the bright line? I know what to do. I know that, Your Honor. I'm just saying you can't-you're not supposed-the court and I, and nobody is supposed to look back 35 years later and go, gosh, that sure looks like an involuntary confession to me. What you do is you look at the case law at the time. United States v. Wirtz was a Fourth Circuit decision, I think, from 1980, and it involved a case where a gun was pulled on a suspect. The suspect confessed, and the court found that that was a voluntary confession. Because he thought that they were going to shoot him? That they were going to kill him? That's the implication. Okay, what does it mean when they say they're going to take him to the gas chamber and he thought they could do that? What I'm saying is- He thought they were going to take him to the gas chamber? In United States v. Wirtz, the Fourth Circuit held that that was not an involuntary confession. The Fourth Circuit held that was a voluntary confession. The gun pointed at him. He confessed. Fourth Circuit said voluntary confession. That was the case law that the officers had available to them at the time. And the case of Bolden v. Holman was cited as controlling authority in that case. And I'm not going to recite exactly what happened, but if you read what the Fourth Circuit describes of the facts in Bolden v. Holman, it is so much worse than anything that was done in this case. It's not even- They can't even compare the two of them. The Fourth Circuit has stated, this is black letter law in the Fourth Circuit, the mere existence of threats, violence, implied promises, improper influence, or other coercive police activity does not automatically render a confession involuntary. In order for an officer to lose the protection of qualified immunity, it has to be beyond debate. If you read the case law that was in existence in 1983, you cannot say that it was not at least debatable that yelling at somebody, threatening them with the possibility of the gas chamber, calling them names, saying that they knew, we know you did it, you need to confess, there was no case putting the officers on notice that that crossed a bright line. That's what I'm saying. And excuse me for getting animated, but, you know, qualified immunity protects every officer unless they cross a bright line. There must be an existing case that puts them on notice that what they're doing violates the Constitution, not suggest that they're violating the Constitution, but tells them when facts are important, when specific facts are important. That's what you look at. So the judicial admission that both brothers confessed, verbally confessed, established probable cause, and the things that the officers did in this case did not cross a bright line, so they're entitled to qualified immunity. And I thank you for your time. Thank you. We'll come down and greet counsel and proceed on to the next case.
judges: Paul V. Niemeyer, Stephanie D. Thacker, Julius N. Richardson